Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 703 | **DATE** | March 10, 2004 |
| **CASE TITLE** | OCWEN FEDERAL BANK -v- PAYTON | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendant Payton is awarded costs in the amount of $829.90 and attorneys' fees in the amount of $16,983.67.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| X | Notices mailed by judge's staff. | | MAR 11 2004 | |
| ✓ | Notified counsel by telephone. | | date docketed | 12 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | | 3-10-04 date mailed notice | |
| JS | courtroom deputy's initials | 2004 MAR 11 AM 8:13 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARTHA PAYTON,<br><br>    Plaintiff,<br><br>v.<br><br>NEW CENTURY MORTGAGE<br>CORPORATION;<br>OCWEN FEDERAL BANK, FSB;<br>U.S. BANK, N.A., and<br>JOHN DOES 1-5,<br><br>    Defendants. | No. 03 C 333 |
| OCWEN FEDERAL BANK, FSB,<br><br>    Plaintiff,<br><br>v.<br><br>MARTHA PAYTON,<br><br>    Defendant. | No. 03 C 703 |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On October 10, 2003, this court ruled on the parties' cross-motions for summary judgment. This ruling included a finding that plaintiff Martha Payton ("Payton") was entitled to recover reasonable attorneys' fees. Payton has now petitioned this court for an award of attorneys' fees and costs. For the following reasons, Payton is awarded costs in the amount of $829.90 and attorneys' fees in the amount of $16,983.67.

1

## BACKGROUND

On January 18, 2002, Payton obtained a mortgage loan from New Century Mortgage Corporation ("New Century"). This loan was assigned to U.S. Bank, N.A., ("USB"), and Ocwen Federal Bank ("Ocwen") functioned as the servicer of the loan. During 2002, Payton missed one or more mortgage payments. Ocwen refused to accept any further payments and determined to foreclose. A foreclosure action was in fact filed against Payton. On December 23, 2002, Payton gave notice by a letter mailed to Ocwen that she was rescinding her loan. The loan was not rescinded. On January 15, 2003, Payton filed a complaint in case number 03 C 333 against defendants New Century, Ocwen, USB and five John Doe defendants requesting rescission of a residential mortgage loan, statutory damages and attorneys' fees and costs for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. On January 30, 2003, Ocwen filed a complaint against Payton in case number 03 C 703,[1] seeking a declaratory judgment that Payton was not entitled to rescind her loan, or in the alternative, that if Payton was entitled to rescind that Ocwen was entitled to receive proper payments owed to Ocwen and that Ocwen was entitled to attorneys' fees and costs. On March 16, 2003, Payton paid-off the loan that was the subject of this litigation by refinancing with another company.

Payton reached an agreement to settle her claims with New Century. New Century was voluntarily dismissed from the action by this court's order of June 24, 2003, which also vacated a previous default judgment entered against New Century. The agreement with New Century provided Payton with a payment of $23,607.02 and attorneys' fees and costs of $6,000.

The October 10, 2003 ruling granted Payton rescission of her loan and rejected defendants

---

[1] This case was reassigned to this court pursuant to Local Rule 40.4 on April 2, 2003.

2

Ocwen and USB's contention in their joint memoranda opposing Payton's motion that refinancing of her loan precluded rescission as a remedy under TILA. This ruling also determined that Ocwen was merely a servicer of the loan, and therefore immune from liability under TILA, and that TILA required the imposition of attorneys' fees against USB. Finally, this court ruled that TILA did not allow the imposition of statutory damages against USB.

## ANALYSIS

"In enacting the Truth in Lending Act, Congress contemplated that the statute would be enforced by private litigants acting as 'private attorneys general.'" Hobson v. Lincoln Ins. Agency, Inc., No. 99 C 5619, 2002 WL 338161, at *2 (N.D. Ill. Mar. 4, 2002). "Upon proper proof, a court should award attorney's fees to a prevailing plaintiff sufficient to vindicate Congress' intent in this regard." Id. (citing cases). TILA specifically provides: "in the case of any successful action . . . in which a person is determined to have a right of rescission . . . the costs of the action, together with a reasonable attorney's fee as determined by the court [is available]." 15 U.S.C. 1640(a)(3).

Twenty years ago, the Supreme Court set forth the two-step approach for district courts to use in determining a reasonable attorneys' fee award. Hensley v. Eckerhart, 461 U.S. 424, 433-35 (1983). First, the Court explained that the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," commonly referred to as the lodestar amount. Id. at 433. Second, considering numerous factors, many of which are subsumed within the initial lodestar calculation, this court may adjust the fee upward or downward. Id. at 434.

I.  The Lodestar Analysis

The Seventh Circuit has stated that "[t]he reasonable hourly rate (or 'market rate') for

3

lodestar purposes is 'the rate that lawyers of similar ability and experience in their community normally charge their paying clients for the type of work in question.'" Harper v. City of Chicago Heights, 223 F.3d 593, 604 (7th Cir. 2000) (quoting Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 555 (7th Cir. 1999)). Payton has the burden of proving the market rates for her attorneys, Edelman, Combs & Latturner, LLC ("ECL"). Id. at 604-05. Evidence of the "market rate" includes rates other attorneys in the area charge paying clients for similar work, fee awards from prior cases, the attorney's credentials, and the attorney's actual billing rate. See People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205, 90 F.3d 1307, 1311-13 (7th Cir. 1996). In addition, an attorney's affidavit alone cannot establish his or her market rate; however, such affidavit "in conjunction with other evidence of the rates charged by comparable lawyers is sufficient to satisfy the plaintiff['s] burden." Harper, 223 F.3d at 604. Once a party establishes his or her attorneys' market rates with evidence, the opposing party must demonstrate why a lower rate should be awarded. People Who Care, 90 F.3d at 1313.

Payton only asserts fee awards from prior cases as evidence of the rates claimed by ECL. Concerning the hourly rates claimed by ECL, USB's only objection is that while Daniel A. Edelman and Michelle Teggelaar request $400 and $225 per hour respectively for their services, previous courts have only approved $360 and $200 per hour respectively. USB makes no other objection regarding the per hour rates claimed by ECL or the number of hours expended by ECL.

The most recent case cited by Payton awards ECL $360 per hour for partners, $310 per hour for junior partners and $200 per hour for senior associates. See Johnson v. Fast Cash Advance, Inc., 00 C 1875 (N.D. Ill. Mar. 6, 2003). Payton argues, however, that the rates of $400 requested by Edelman (described as a partner and 1976 law school graduate in his own affidavit attached to the

4

fee petition) and $225 requested by Teggelaar (described as an associate and 1997 law school graduate in Edelman's affidavit attached to the fee petition) are reasonable because the ruling in <u>Fast Cash Advance, Inc.</u> by Judge Lefkow concerned work done from 2000 through October of 2002, and that counsels' fees have been raised according to annual adjustments for inflation. In support Payton cites <u>Covington v. District of Columbia</u>, 839 F. Supp. 894 (D.D.C. 1993) where Judge Lamberth found that it was appropriate to have an annual increment of $10 per year for a lawyer's billing rate to account for inflation. This court will increase the rates allowed in <u>Fast Cash Advance, Inc.</u> by Judge Lefkow, the only evidence of ECL's billing rates, to adjust for one year of inflation. Therefore, this court will allow a rate of $370 for partners and $210 for the associate who worked on this case. USB does not object to the hourly rates claimed by ECL for its paralegals. Therefore, this court finds the following hourly rates to be reasonable:

| | |
|---|---|
| Partners (Daniel A. Edelman and James O. Latturner): | $370 |
| Associates (Michelle R. Teggelaar): | $210 |
| Paralegals: | $100 - $105 |

Utilizing these hourly rates results in a lodestar amount (before further deductions) of $24,737.50[2] based upon 128.4 total hours of work performed by ECL's lawyers and paralegals.[3]

II. <u>Reducing the Lodestar</u>

Payton concedes that the Lodestar should be reduced $6,000 to account for the attorneys' fees

---

[2] Daniel A. Edelman: 8.0 hours x $370 an hour = $2,960
James O. Latturner: .4 hours x $370 an hour = $148
Michelle R. Teggelaar: 87.5 hours x $210 an hour = $18,375
Paralegals: .9 hours x $105 an hour = $94.50
Paralegals: 31.6 hours x $100 an hour = $3,160

[3] USB makes no objection to the number of hours expended by ECL. Therefore, this court has not altered the number of hours claimed by ECL.

5

paid by New Century and $1,753.83 to account for issues upon which Payton did not prevail. Payton also asserts that all time entries concerning only New Century have been omitted from the current request for attorneys' fees. USB does not dispute Payton's assertion regarding the removal of time entries solely concerning New Century, but does argue that (1) the Lodestar should not include any fees generated after March 10, 2003, the date Payton refinanced her loan, because the case was moot after that date, or in the alternative, that (2) the Lodestar amount should be reduced by two thirds, instead of the $1,753.83 conceded by Payton, to account for the issues Payton did not prevail upon at summary judgment. As explained below, this court rejects both arguments.

First, this case was clearly not moot as of March 10, 2003. Payton was continuing to sue Ocwen and USB for rescission and statutory damages after the date of refinancing. Furthermore, USB's servicer and co-defendant Ocwen's conduct belies the conclusion that the issue of rescission was mooted by Payton's refinancing. Ocwen, suing as the servicer of USB's loan to Payton, never withdrew its declaratory judgment request that Payton's loan was not subject to rescission. Despite this fact, USB now argues that the issue of rescission was moot on March 10, 2003 when Payton refinanced her loan. At summary judgment, defendants USB and Ocwen made similar arguments (though they never argued this case was moot) in their joint memoranda. This court, for the reasons stated in the October 10, 2003 order ruled that rescission was an appropriate remedy notwithstanding Payton's refinancing. This court also denied, on December 22, 2003, USB and Ocwen's motion to reconsider the October 10, 2003 summary judgment ruling.

This court is mindful of the Supreme Court's admonishment in <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983) that "[w]hen an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has

6

considered the relationship between the amount of the fee awarded and the results obtained."
Nevertheless, USB cannot attempt to reargue summary judgment on this motion for attorneys' fees
by arguing that Payton's relief is limited because this court was wrong to grant a remedy on an issue
that was moot. If USB does not agree with this court's summary judgment ruling, then an appeal
to the Seventh Circuit is its only remaining remedy.

Second, this court will reduce the lodestar amount according to Payton's own concessions
to account for the issues upon which Payton did not prevail. This court, likewise, will not grant
Payton fees she concedes are unnecessary. However, this court will not reduce the lodestar amount
further, as argued by USB, due to the fact that Payton failed to prevail on her claim that defendants
were liable to her for the statutorily defined damage award of $2,000. As the Supreme Court stated
in Hensley, "it [is not] necessarily significant [for purposes of reducing an award of attorneys' fees]
that a prevailing plaintiff did not receive all the relief requested. For example, a plaintiff who failed
to recover damages, but obtained injunctive relief, or vice versa, may recover a fee award based on
all hours reasonably expended if the relief obtained justified that expenditure of attorney time."
Hensley 461 U.S. at 435 n.11.

Payton initiated this suit for the primary purpose of obtaining rescission of her loan after
notifying defendants of her intent to rescind. In addition to rescission, Payton pursued the statutory
damage award of $2,000 provided for by TILA. These minimal damages were not the primary
purpose of this lawsuit; rescission was the primary relief sought by Payton. This court rules that
Payton's failure to obtain nominal damages provided for by TILA does not justify a substantial
reduction in Payton's attorneys' fees where the primary relief of rescission was obtained by Payton.
USB elected to litigate the issue of rescission, including the filing of an action requesting a

declaratory judgment that Payton was not entitled to rescind. Payton prevailed on her request that this court award her a rescission. Therefore, an appropriate award of attorneys' fees is the fee amount which was reasonably necessary to obtain rescission through this litigation. USB does not argue that any of the hours expended by Payton's counsel were not reasonably necessary to obtain the relief granted to her at summary judgment. Therefore, this court rejects USB's request to reduce Payton's attorneys' fees because she did not obtain the $2,000 in statutory damages.

As stated earlier, the lodestar amount of $24,737.50 is reduced by the $6,000 Payton received from New Century and the $1,753.83 she concedes is unwarranted. These deductions total $7,753.83. Therefore, the attorneys' fees award totals $16,983.67 ($24,737.50 - $7,753.83).

III. Costs

Plaintiff also requests costs in the amount of $828.90. Plaintiff initially filed a bill of costs with this court on November 7, 2003 and has reiterated her request for costs in her motion for her attorneys' fees. These costs consist of $560.10 in copying costs (3,734 pages at $.15 per page), $150 for the filing fee and $118.80 for service of summons. USB makes not objection to these costs. This court finds these costs reasonable and necessary for the prosecution of this suit and awards them to Payton.

CONCLUSION

Accordingly, Payton is awarded costs in the amount of $829.90 and attorneys' fees in the amount of $16,983.67.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge

DATE: March 10, 2004